UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


MICHAEL PAUL BRIZENDINE                                    PETITIONER

v.                                              CIVIL ACTION NO. 3:11-CV-180-C

PHILLIP W. PARKER, WARDEN                                  RESPONDENT


## REPORT AND RECOMMENDATION

This matter is before the court on Michael Paul Brizendine's *pro se* petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254.  The petitioner brings twenty-three claims in

support of the petition, including ineffective assistance of counsel and due process violations.

The respondent, Philip W. Parker, Warden, argues that the petition should be dismissed on

grounds of procedural default and on the merits.  The court referred this matter to the

undersigned magistrate judge, pursuant to 28 U.S.C.§ 636(b)(1)(A) and (B), for a report and

recommendation.  For reasons stated below, the magistrate judge recommends that the court

deny the petition.


## I.  FINDINGS OF FACT

1)      The petitioner is serving a life sentence without the possibility of parole for

twenty-five years for a conviction, following a jury trial, on two counts of wanton murder, two

counts of first degree robbery, first degree burglary, and being a persistent felony offender,

second degree.  The petitioner appealed the conviction, and the Supreme Court of Kentucky

affirmed.  In its unpublished opinion, the court summarized the facts of the case as follows:

On July 3, 1996, Jeffrey Wilson and Johnny Nash were found dead in Wilson's residence where a drug transaction was intended to take place between the victims, [the petitioner], and George Hobbs, [the petitioner's] co-defendant.  Ray Joseph, the middleman who arranged the drug deal and a witness at the joint trial, testified that [the petitioner] and Hobbs went to Wilson's residence to buy a kilogram of cocaine, but once inside spoke words indicating a setup, and pulled guns on Wilson and Nash. Joseph testified that he then ran out of the residence to the car and heard several gun shots seconds later. [The petitioner] then ran to the car with a "Tommy Hilfiger" bag.  Two weeks later, Hobbs was arrested, and a "Tommy Hilfiger" bag, which had his ID card attached and contained his wallet and cocaine, was found at the location of his arrest.[1]

2)      The petitioner unsuccessfully pursued collateral review in state court, before

seeking federal habeas relief.

## II.  CONCLUSIONS OF LAW

**A.  Standard of Review**

3)      The federal habeas statute, as amended in the Antiterrorism and Effective Death

Penalty Act of 1996, provides relief from a state conviction if the petition satisfies one of the

following conditions:

the [state court's] adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1]Response to Petition (DN 12), Appendix at 136-37.

-2-

28 U.S.C. § 2254(d).  This statute further provides that state court determinations of fact are presumed to be correct.  § 2254(e)(1).

    4)    The petitioner carries the burden of proof under § 2254(d), which is a "highly deferential standard for evaluating state-court rulings," unlike review on direct appeal, and "demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398 (2011).  When the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010) (stating that a dual finding, incorrectness and unreasonableness, are essential elements to habeas relief.)

    5)    In the same vein, a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable.  *Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (stating, "Reasonable minds reviewing the record might disagree ... but on habeas review that does not suffice to supercede the trial court's credibility determination.").  A federal court must assess whether the state court's decision was unreasonable in light of the record that was before the state court.  *Pinholster,* 131 S.Ct. at 1400.

## B.  Procedural Default

    6)    Before addressing the merits of any claims presented in the federal petition, this report will address the procedural default objection to granting the writ.  The respondent argues

that federal review is foreclosed on claims six through twenty-three in the petition because the petitioner defaulted on those claims in state collateral attack proceedings. The magistrate judge agrees.

7) The rule of procedural default bars a federal court's habeas review of a claim, if the state court was prevented by a state procedural rule from reaching the merits of the claim. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v Sykes*, 433 U.S. 72 (1977)).

8) The Kentucky Court of Appeals described the circumstances surrounding the petitioner's default. Nine months after conviction was affirmed, the petitioner filed a *pro se* motion to vacate, under Kentucky Rule 11.42 of Criminal Procedure, on numerous grounds of ineffective assistance of counsel, prosecutorial misconduct and other due process violations. The motion omitted factual allegations, but the petitioner also filed a motion to hold in abeyance in order "to factually, accurately, and completely present his assertions and evidence" to the court.[2] The petitioner also filed a motion for appointment of counsel.

9) The trial court appointed an attorney from the state department of public advocacy and ordered that counsel "has 90 days to supplement."[3] Appointed counsel filed no pleading whatsoever and the case lay dormant. Almost five years later, appointed counsel then filed a motion to submit on the pleadings and stated that counsel's review and investigation found "no additional facts or issues for supplementation."[4] The petitioner then filed a *pro se*

---

[2]App. 243.

[3]App. 244.

[4]App. 244.

-4-

supplemental memorandum, but the trial court dismissed the motion, essentially filed six years after final conviction, on grounds of default.

10)     The petitioner appealed, and the Kentucky Court of Appeals affirmed without reaching the merits of the underlying claims.[5]  The state court held that the motion did not conform with Rule 11.42's time and particularity requirements:  1) absent excusable neglect, a motion must be filed within three years of a final conviction; and 2) a motion must allege a factual basis entitling the movant to relief.[6]  The court reasoned that because representation does not excuse a litigant from giving a case personal attention and because the petitioner failed to offer any explanation for his own lack of diligence, the petitioner failed to show excusable neglect to supplement the original pleading.[7]

11)     On federal habeas review, "claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error,"  *House v. Bell*, 547 U.S. 518, 536 (2006); *Tolliver v. Sheets*, 594 F.3d 900, 928 (6th Cir. 2010), or shows that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case, *Seymour,* 224 F.3d at 549-50 (citing *Wainwright v Sykes*, 433 U.S. 72 (1977)).  To establish cause, the petitioner must present affirmative evidence, showing that an "objective factor external to the defense" impeded efforts to comply with the state procedural rule.  *Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2006).  The magistrate judge concludes the petition fails to satisfy this standard.

---

[5]Nevertheless, the Kentucky Court of Appeals characterized the post-conviction claims as "not particularly compelling."  App. 248.

[6]App. 249-51.

[7]App. 249.

12)     The petitioner argues that because the state-law default was due to his counsel's error, there is sufficient cause to excuse the default.  In his reply memorandum, the petitioner contends "he had been repeatedly consoled (sic) by counsel upon multiple inquiries over these three years that 'these things take time and not to worry.'"[8]  The petitioner's reliance on counsel's neglect, however, is unavailing.

13)     A steadfast rule of procedural default holds that attorney error or incompetence in a state collateral proceeding can never establish cause, even if counsel is appointed under state law.  *See* § 2254(i); *Holland v. Jackson*, 542 U.S. 649, 653 (2004); *McCleskey v. Zant*, 499 U.S. 467, 495 (1991).  This limitation recognizes two principles:  that ordinary attorney error does not constitute cause, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), and that a defendant is entitled to the effective assistance of counsel at trial and thereafter only on his first appeal as a matter of right, not on collateral proceedings, *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

14)     The magistrate judge further concludes that procedural default of these claims will not result in a miscarriage of justice.  The petitioner has provided nothing more than the generalized statement that he relied on counsel for over five years and has made no attempt to cure this same deficiency observed by the Kentucky Court of Appeals.[9]

15)     Just as his claims for excusing the default are not compelling, the underlying claims themselves lack substance.  From the outset, a reading of the petitioner's ineffective assistance of counsel claims reveals inconsistent defense theories.  On the one hand, the petitioner argues his attorney should have requested an extreme emotional distress ("EED") jury

---

[8]Petitioner's Response at 2 (DN 15).

[9]App. 248.

instruction because the evidence supported that the petitioner feared he was in danger (his surprise finding Nash and running from the residence); and, on the other hand, his counsel should have called an expert to challenge the ballistics evidence and secured alibi witnesses (unnamed) to prove his actual innocence.  (Claims 7,8, 9, 19, 20.)

16)     The petitioner premises many of the ineffective assistance claims and claims of prosecutorial misconduct on the assertions that the prosecution falsely offered evidence that the Tommy Hilfiger bag at the scene, was the same bag later seized, and that the victim Nash's wallet was stolen.  According to the petitioner, an evidence log listed an intact wallet seized at the scene.  (Claims 6, 10, 14, 15, 16, 17.)  The Kentucky Court of Appeals explained that the log, provided to the defense in discovery, failed to show that the wallet belonged to Nash or the other victim and that, moreover, the Kentucky Supreme Court found other ample evidence to convict the petitioner of robbery.[10]  The Kentucky Supreme Court further concluded that the jury drew permissible inferences, supported by ample evidence including the Tommy Hilfiger bag, that the petitioner intended to commit a robbery.[11]

17)     The petitioner also challenges the constitutionality of Kentucky murder statutes, on their face and as applied, and the appropriateness of jury instructions based on textual distinctions between intentional, wanton, and felony murder.  (Claims 11, 12, 13, 21, 22, 23.)

18)     In at least two claims, the petitioner argues errors related to the ballistics evidence and the EED defense but fails to allege the denial of any federal right.  (Claims 18, 19.)

19)     After thorough consideration, the magistrate judge concludes that procedural

---

[10]App. 247;  Pet. Ground Fourteen (DN 11-1, Page 3 of 31).

[11]App. 146-47.

default of claims 6 through 23 is an appropriate disposition and will recommend that the court deny the petitioner federal habeas review of these claims for failure to show cause and prejudice to excuse the state-law default.

**C. Remaining Claims – Grounds One through Five:**

20)     The first five grounds in the petition are the same claims asserted in the petitioner's direct appeal.  The respondent argues each claim should be denied on the merits because the state court's determination of these claims did not involve incorrect or unreasonable application of clearly established Supreme Court precedent.  The magistrate judge agrees.

21)     The petitioner and his co-defendant were tried jointly.  According to the petitioner's account of the evidence, the victims died from multiple gunshot wounds in their backs after laying prone on the floor.[12]  The petitioner's defense essentially was that he was not present and had no involvement.  His co-defendant's defense was that he waited in the car, while the petitioner and Joseph went into Wilson's house.[13]  The prosecution relied on the testimony of the Joseph.  The prosecution also presented testimony of Joseph's wife to establish that the petitioner possessed or had access to guns, evidence of other crimes or bad acts admitted under Kentucky Rule of Evidence 404(b).[14]  The jury received instructions on both intentional murder and wanton murder.

**Grounds One and Two**

22)     The petitioner claims that the trial court erred in failing to order separate trials

---

[12]Petition, Ground 7.

[13]App. 138.

[14]App. 141.

and in admitting 404(b) evidence.  Neither presents, however, a cognizable federal habeas claim.

"In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62

(1991).  Thus, "[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."  *Id*. at 67-68.  As a result, "errors in application of state

law, especially with regard to the admissibility of evidence, are usually not cognizable in federal

habeas corpus."  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).  The magistrate judge thus

concludes these state evidentiary rulings fail to implicate fundamental fairness principles of the

federal due process clause, and will recommend that the court deny these claims.

**Ground Three**

23)     The petitioner also claims the state court erred in failing to direct a verdict of

acquittal on the charges of wanton murder, burglary and robbery.  On a sufficiency-of-the-

evidence claim, "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt."  *Nali v. Phillips*, 681 F.3d 837, 841 (6th Cir. 2012)

(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  This standard requires deference to the

jury's verdict and to the state court's review of that verdict.  *Id.*  A reviewing court "do[es] not

reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that

of the jury."  *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir.2009) (citing *United States v.

Hilliard,* 11 F.3d 618, 620 (6th Cir.1993)).

24)     The Supreme Court of Kentucky ruled that the prosecution presented sufficient

evidence to support the jury's verdict.  The evidence revealed that the petitioner carried a bag

into the residence and was seen with it after the shootings; that the bag contained cocaine when found later; that the petitioner had no money in his possession when he went to Wilson's residence; that Nash's pocket was turned inside out and had no wallet on his person, among other evidence.  Such evidence supports wantonness and extreme indifference to the value of human life.[15]  Under Kentucky law, if a perpetrator decides to steal after murdering the victim, the offense of first degree robbery is committed so long as the theft and murder are part of the same episode.[16]  Finally, evidence that the petitioner possessed a gun upon entering the residence supported the burglary offense.

25)     The magistrate judge concludes the Kentucky court's determination was not contrary to the Supreme Court's decision in *Jackson* and will recommend that the court deny this claim on the merits.

**Ground Four**

26)     The petitioner also argues the burglary instruction offered alternate theories, that the petitioner either entered or remained unlawfully, and thus violated his right to a unanimous verdict.  The Kentucky Supreme Court determined there was sufficient evidence, including testimony he carried the bag and a gun, to support both theories, either that the petitioner entered the premises intending to commit a robbery or that he entered through deception or fraud, which made his entry unlawful.[17]

27)     A general jury verdict supported by alternate theories does not violate due process

---

[15]App. 144.

[16]App. 145.

[17]App. 147.

as long as sufficient evidence supports one ground.  *Griffin v. United States*, 502 U.S. 46 (1991).

The magistrate judge concludes the state court's determination did not result in a decision

contrary to clearly established Supreme Court precedent and will recommend that the court deny

this claim.

**Ground Five**

28)     Lastly, the petitioner claims the prosecutor's remarks during closing argument

violated the presumption of innocence and his right to remain silent.  The prosecutor commented

that witness Joseph's identification of the petitioner at the scene, as the third person in the car

that night, as the third person involved, was testimony or "facts" that were "uncontradicted."

The prosecutor stated that the petitioner "offers no theory, no explanation, of why [the petitioner]

was the third person involved," and that "there's been absolutely no theory put forth as to why

[Joseph] would have manufactured the name of [the petitioner] as being the third person in the

car that night."[18]

29)     A prosecutor's comment on the defendant's failure to testify or to rebut evidence

of guilt does not violate the defendant's Fifth Amendment rights if the state presents an

otherwise "compelling case of guilt" and review of the record as a whole shows that the jury

verdict would have been the same.  *United States v. Hasting*, 461 U.S. 499, 510-11 (1983); *see*

*also Lundgren v. Mitchell*, 440 F.3d 754, 780 (6th Cir. 2006).  The Supreme Court of Kentucky

ruled that the prosecutor's comments did not violate the petitioner's right to silence because the

jury was instructed on the presumption of innocence and because the prosecutor did not

comment directly on the petitioner's decision not to testify.  In the magistrate judge's view, the

---

[18]Pet. Ground Five.

-11-

record as a whole, as discussed in the context of the sufficiency-of-evidence claims, provided overwhelming evidence of guilt.  The jury reasonably credited the testimony of Joseph and his wife.  Thus, on habeas review, the jury's credibility determination must stand.

30)     The magistrate judge concludes that the state court's determination of this claim did not result in a decision that was contrary to, or involve an unreasonable application of, Supreme Court precedent.  Therefore, the magistrate judge will recommend that the court deny this claim.

### III.  RECOMMENDATION

The magistrate judge recommends that the court deny the petition, grounds one through five, for failure to satisfy § 2254(d) and (e), and grounds six through twenty-three, for failure to show cause and prejudice to excuse a state-law default.

### IV.  CERTIFICATE OF APPEALABILITY

If the district court agrees with the magistrate judge's recommendation in this matter, it must determine whether a certification of appealability should issue.  Before seeking an appeal, Section 2253, Title 28 of the United States Code, requires a habeas petitioner to make a substantial showing of the denial of a constitutional right.  This does not require a showing that the appeal will succeed.  *Slack v. McDaniel*, 529 U.S. 473 (2000).  Rather, the petitioner must show that reasonable jurists could find debatable whether the petition should be resolved in a different manner or that the matter deserves further review.  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The magistrate judge concludes no reasonable jurist could find debatable the conclusion

-12-

that the petition, grounds one through five, fail on the merits, and grounds six through twenty-three are barred by the rule of procedural default.  Therefore, the magistrate judge recommends denying a certificate of appealability.

DATE:

Copies to:      Counsel of Record
                Pro Se Petitioner


# N O T I C E

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived.  *Thomas v. Arn*, 782 F.2d 813 (6th Cir. 1984); 28 U.S.C. § 636(b)(1)(C).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.